UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, Government, vs. BY TRADE OU, Defendant. | Case No. 22CR100(VAB) 915 Lafayette Blvd Bridgeport, CT December 1, 2022 |

TRANSCRIPT OF PLEA HEARING

BEFORE: THE HONORABLE VICTOR A. BOLDEN, U.S.D.J.

APPEARANCES:

FOR THE GOVERNMENT: RAHUL KALE, ESQ.
U.S. Attorney's Office-BPT
1000 Lafayette Blvd.
10th Floor
Bridgeport, CT 06604

FOR DEFENDANT: IGOR LITVAK, ESQ.
The Litvak Law Firm, PLLC
1733 Sheepshead Bay Road
Suite 22
Brooklyn, NY 11235

Sharon Montini, RMR, FCRR
Official Court Reporter

Proceeding recorded by mechanical stenography, transcript produced with computer

(Proceeding commenced 9:12 a.m. via Zoom videoconferencing.)

THE COURT: Good morning. Actually, can you hear me? I'm not sure my mic is on. Can you hear me? No, the microphone is not on.

THE CLERK: Sorry, Judge, we can't hear you.

THE COURT: Is this working now?

THE CLERK: It's working for me.

THE COURT: Everyone can hear me? All right. Good.

All right. We're here in United States of America v. By Trade OU. Will counsel please state their appearances for the record.

MR. KALE: Rahul Kale on behalf of the United States. Good morning, Your Honor.

THE COURT: Good morning, Mr. Kale.

MR. LITVAK: Good morning, Your Honor. Igor Litvak on behalf of By Trade.

THE COURT: All right. Good morning.

And I understand that By Trade is a corporate entity, and what I understand is that, Mr. Litvak, you have been given authority by the board of directors of that entity to represent it, correct?

MR. LITVAK: Yes, I have, and there is also a resolution from the board as well.

THE COURT: All right, there is a resolution from the board. And so in terms of all of the mechanics, will you or someone else be speaking on behalf of the corporation with respect to the necessary recitations and the taking of the actual guilty plea?

MR. LITVAK: Actually, I have a member of the board with us here today, Jekaterina Loktajeva, and she will be speaking on behalf of By Trade.

THE COURT: Okay. All right. So then why don't I do this. Since we have an interpreter here, let me sort of swear in the interpreter and then we can then have introductions of this representative.

All right. Ms. Murphy, would you please swear in the interpreter.

(Oath administered.)

THE CLERK: Please state and spell your last name for the record.

THE INTERPRETER: The last name I have just corrected on the screen. It's C-H-E-K-I-N.

THE CLERK: Thank you.

THE COURT: All right. Thank you very much, sir. Would you state your qualifications for the record.

THE INTERPRETER: Sir, I am a professionally qualified court interpreter for Russian language, and I am in a national court interpreter database. I am certified by the state of Maryland and the national consortium of state courts. I have interpreted for very many different proceedings in federal, state court positions, and the international center for the resolution of investment disputes at the World Bank. So those are my qualifications.

THE COURT: All right. Thank you very much. And have you had an opportunity to speak to the person for whom you will be interpreting this morning?

THE INTERPRETER: Yes, sir. We exchanged a couple of phrases just to make sure that Ms. Loktajeva understands my Russian and that I understand her Russian language, and we understand each other.

THE COURT: Great. So you've had no difficulty communicating with her.

MS. CLARK: Absolutely no difficulty,

sir.

THE COURT: Is there any reason why you would not be able to fairly, justly, and truly interpret for these proceedings?

THE INTERPRETER: I don't see any such reason, sir.

THE COURT: All right. Thank you very much. Welcome, and I appreciate you being here.

THE INTERPRETER: Thank you. It's my pleasure.

THE COURT: All right. What I want to do now is have the corporate representative for By Trade introduce herself for the record.

DEFENDANT REPRESENTATIVE: My name is Jekaterina Loktajeva.

THE COURT: All right. And what is your position?

DEFENDANT REPRESENTATIVE: I am a member of the board of managers. I'm a representative of the company By Trade.

THE COURT: And you are authorized to be here on behalf of By Trade for purposes of this proceeding?

DEFENDANT REPRESENTATIVE: Yes, everything is correct. Yes.

THE COURT: All right. Thank you very much. Let me -- before we begin, let me just say that I'm in no hurry and I want you to understand completely what's going on here today. So if at any time you have any question or problems or you need time to speak with By Trade's attorney, Mr. Litvak, just let me know. We'll provide an opportunity for you to do so.

Even though we are here on this videoconference proceeding, it is important for me to note that you can be placed in a separate breakout room in order to talk with Mr. Litvak. Do you understand that?

DEFENDANT REPRESENTATIVE: Yes, I understand. Very good. Thank you very much.

THE COURT: All right. And on that note, I do want to note that we are conducting this important proceeding by videoconference by authority given to this Court under the CARES Act in light of circumstances related to the ongoing pandemic known as the coronavirus, but -- and the Court recognizes that there is threat to public safety in having all proceedings in person and is willing to conduct this proceeding, recognizing the interest of public safety in doing so. But it is clear and it's

important to understand that By Trade has the right to have this proceeding take place in person.

And I need to know whether or not first, Mr. Litvak, have you advised By Trade of their right to have this proceeding take place in person and are they nonetheless willing to waive any such right and proceed by videoconference today.

MR. LITVAK: Yes, I have, Your Honor, and they're willing to waive that right and proceed by videoconference. Also it would be physically impossible for them to be here in person because they are located overseas and there is no practical way for anybody to get here.

THE COURT: All right. Thank you very much.

And for By Trade's representative, do you understand that you could have -- you have a right to have this proceeding take place in person, but are you willing nonetheless to waive that right and willing to proceed by videoconference today?

DEFENDANT REPRESENTATIVE: Yes. Yes, I am aware of that.

THE COURT: Thank you very much. And are you willing? You are willing to proceed by videoconference?

DEFENDANT REPRESENTATIVE: Yes, of course.

THE COURT: All right. And now, as the corporate representative for By Trade, there are some questions I'm going to have to ask you while you are under oath to assure myself that this is a valid plea. What I'm going to do is have my courtroom deputy swear you in.

Ms. Murphy.

(Oath administered.)

THE COURT: All right. Thank you very much.

What I'm going to do now is advise you of your rights that you can exercise on behalf of By Trade. You have the right to remain silent. You have the right not to continue with a statement if you begin one. Your statements can be used against you. You have a right to have counsel at every stage of these proceedings. You have the right to have counsel appointed if you cannot afford counsel. And in the United States there is an attorney-client privilege which allows you to speak confidentially with your lawyer. Do you understand all of these rights?

DEFENDANT REPRESENTATIVE: Yes, I do

understand that.

THE COURT: All right. And do you understand that having been sworn you will be subject to the penalties for perjury or for making a false statement if you do not answer truthfully here today?

DEFENDANT REPRESENTATIVE: Yes, I understand.

THE COURT: And you understand if the government chooses to prosecute you for perjury or for making a false statement it could use against you any statement that you gave here today under oath?

DEFENDANT REPRESENTATIVE: Yes, I do understand.

THE COURT: All right. Thank you very much. Now, for the record, would you please state your full name.

DEFENDANT REPRESENTATIVE: Jekaterina Loktajeva.

THE COURT: Have you ever used any other names?

DEFENDANT REPRESENTATIVE: Yes, I was married at some point and I had a different last name.

THE COURT: And what was that last name?

DEFENDANT REPRESENTATIVE: The last name was Shapovalova.

THE COURT: All right. Thank you. And in what year were you born?

DEFENDANT REPRESENTATIVE: 1987.

THE COURT: And where were you born?

DEFENDANT REPRESENTATIVE: Estonia, the city of Tallinn.

THE COURT: Thank you. So you are not a United States citizen, correct?

DEFENDANT REPRESENTATIVE: I am not.

THE COURT: All right. Thank you. And how far did you go in school?

DEFENDANT REPRESENTATIVE: I have higher education. Bachelor degree.

THE COURT: And are you now or have you recently been under the care of a physician, psychiatrist, social worker or counselor?

DEFENDANT REPRESENTATIVE: No.

THE COURT: In the past 48 hours, have you taken any narcotic drugs, medicine, or pills?

DEFENDANT REPRESENTATIVE: No.

THE COURT: In the past 48 hours, have you consumed any alcoholic beverages?

DEFENDANT REPRESENTATIVE: No.

THE COURT: Have you ever been hospitalized or treated for alcoholism or a narcotics addiction?

DEFENDANT REPRESENTATIVE: No.

THE COURT: And today, as you are here before this Court, is your mind clear?

DEFENDANT REPRESENTATIVE: Yes, absolutely.

THE COURT: And you do understand what is going on here today?

DEFENDANT REPRESENTATIVE: Yes, I do understand that.

THE COURT: Mr. Litvak, are you sure that the defendant understands the nature of these proceedings?

MR. LITVAK: Yes, I am, Your Honor.

THE COURT: And have you had any difficulty in communicating with your client?

MR. LITVAK: I have not, Your Honor.

THE COURT: And you have discussed this case with your client?

MR. LITVAK: Extensively.

THE COURT: And your client understands the rights your client will be waiving by waiving

indictment and pleading guilty?

MR. LITVAK: Yes, the client does understand that.

THE COURT: Actually, I'm sorry, there is an indictment.

Mr. Kale, there is an indictment already, correct?

MR. KALE: There is. There is actually a superseding indictment.

THE COURT: All right. Thank you.

So the client understands the rights the defendant will be waiving by pleading guilty?

MR. LITVAK: Yes, the client does understand that.

THE COURT: Do you have any doubt as to the client's or this representative's competence to plead guilty on behalf of the corporation at this time?

MR. LITVAK: I do not, Your Honor.

THE COURT: Ma'am, have you had an opportunity to discuss this case with your attorney, Mr. Litvak?

DEFENDANT REPRESENTATIVE: Yes.

THE COURT: And are you satisfied with the representation that you have been provided?

DEFENDANT REPRESENTATIVE: Yes.

THE COURT: All right. Mr. Kale, what is the nature of the charge against By Trade, the maximum sentence to which they could be exposed, and any mandatory minimum?

MR. KALE: Your Honor, there are two charges to which By Trade OU -- there are actually two charges, Your Honor. The first is a conspiracy to violate the Export Control Reform Act. That's a violation of Title 18, United States Code, Section 371. And the second charge is international money laundering conspiracy. That's a violation of Title 18, United States Code, Section 1956(h).

THE COURT: All right. Thank you. I'm sorry, go ahead and finish.

MR. KALE: Yeah, I wasn't sure if Your Honor wanted me to go over the elements yet.

THE COURT: No, not the elements. I just want to make sure in terms of the maximum sentence to which they could be exposed and any minimum that might apply.

MR. KALE: Sorry. I apologize. With regard to Count One, the maximum sentence is five years' imprisonment, and with regard to -- well, because it's a corporate entity there is no term of

imprisonment. So the maximum penalty for both charges is a term of probation of at least one year, but not more than five years. The maximum penalty for a corporation for a fine is $500,000 or twice the gain or twice the loss resulting from the offense.

And for Count Four, specifically there is also the potential for twice the value of the monetary instruments that were involved in the transmission involved in the transaction.

Finally, Your Honor, for each count, for a corporate entity, there is a special assessment of $400, leading to a total of $800.

THE COURT: Thank you very much, Mr. Kale.

By Trade's representative, do you understand the charges the company is facing?

DEFENDANT REPRESENTATIVE: Yes, I do understand that.

THE COURT: And do you understand the penalties that are associated with these charges?

DEFENDANT REPRESENTATIVE: Yes, I do understand that.

THE COURT: All right. Now, turning to the plea itself, have you had enough of an

opportunity to discuss your case with your attorney?

DEFENDANT REPRESENTATIVE: Yes.

THE COURT: And do you believe your attorney, Mr. Litvak, has answered your questions well enough and given you enough advice and guidance for you to make a decision about pleading guilty?

DEFENDANT REPRESENTATIVE: Yes, that's absolutely correct.

THE COURT: And do you have any concerns, once again, about whether Mr. Litvak has done a good job for you?

DEFENDANT REPRESENTATIVE: No, I don't have any concerns.

THE COURT: All right. What I'm going to do now is review with you the various rights that you'd be giving up if you decide to plead guilty today. I'm going to go through each of them to make sure that you are aware of them before you enter a plea of guilty on behalf of the corporation. Please listen carefully because at the end of this review I'm going to ask you if you understand them and know that you are waiving every one of these rights by entering a plea of guilty.

The first and most important thing you must understand is that you do not have to plead

guilty even if you think you are guilty. Instead, you can require the government to prove its case at trial.

Under our system of law the prosecutor has the burden of proving the guilt of a defendant beyond a reasonable doubt, and if the prosecutor is unable to meet this burden, the jury has the duty to find the defendant not guilty.

It sometimes happens in American courtrooms that a jury returns a verdict of not guilty, and what they're saying is not necessarily that the defendant was innocent, but rather that the government had failed to meet its burden of proving beyond a reasonable doubt that the defendant was guilty. Do you understand that?

DEFENDANT REPRESENTATIVE: Yes, I understood that.

THE COURT: So even if you believe the corporation is guilty, the corporation does have a choice. It may, you doing so on their behalf, plead guilty, as the corporation now apparently wishes to do, or it could decide and say to the government "meet your burden of proving my guilt beyond a reasonable doubt." And the way you exercise that option is by saying "not guilty" when I ask you how

the corporation wishes to plead. You have a right to plead not guilty, and once you plead not guilty, or if you have already pled not guilty, you have a right to persist in that plea. Do you understand that?

DEFENDANT REPRESENTATIVE: Yes, I do understand that.

THE COURT: If the corporation pleads not guilty, the Constitution and federal laws entitle it to a speedy public trial by jury with the assistance of a lawyer at every stage of the proceedings on the charges in the indictment. If you could not afford counsel, you would have the right to have counsel appointed to represent you. At a trial you would be presumed innocent and the government would have to overcome that presumption by proving the corporation guilty of each and every element of the crimes charged by competent evidence and beyond a reasonable doubt. You would not have to prove that you were innocent. If the government were to fail to prove each and every element, the jury would have the duty to find you not guilty. Do you understand that?

DEFENDANT REPRESENTATIVE: I do understand that.

THE COURT: In the course of a trial the witnesses for the government would have to come to court and testify in your presence and the counsel would have the right to cross-examine the witnesses for the government, to object to evidence offered by the government and to offer evidence on its behalf, and to use a subpoena to obtain the attendance of witnesses to testify at trial on the corporation's behalf. At trial, while someone on behalf of the corporation would have the right to testify if it chose to do so, no one from the corporation could be required to testify. There is a constitutional right not to be compelled to take the stand against -- at a criminal trial against oneself. So if the corporation decided not to have anyone testify, the Court would instruct the jury that it was exercising its right and that it could not hold that against it.

If, however, the corporation decides to plead guilty, I will have to ask you as its representative what was done in order to satisfy myself that the corporation is, in fact, guilty, and you'll have to answer my questions and admit your guilt.

If someone such as you pleads guilty on

behalf of the corporation, and I accept that plea as valid, the corporation will be giving up its constitutional right to a trial and the other rights I have just discussed. There will be no trial of any kind and no right to appeal the conviction, although under some circumstances either the corporation or the government may have the right to appeal any sentence that I would impose. So I would simply enter a finding of guilty on the basis of the guilty plea. Do you understand that?

DEFENDANT REPRESENTATIVE: Yes, I understand that.

THE COURT: Do you understand all of the rights that I have just reviewed with you?

DEFENDANT REPRESENTATIVE: Yes, I understand everything.

THE COURT: And do you have any questions about anything that I have said so far?

DEFENDANT REPRESENTATIVE: No. For the time being, no questions.

THE COURT: All right. So is By Trade OU through you willing to give up its right to a trial?

DEFENDANT REPRESENTATIVE: No.

THE COURT: I'm sorry, are they willing

to give up the right to a trial? Is the corporation willing to give up its right to a trial?

DEFENDANT REPRESENTATIVE: No, it doesn't want to.

THE COURT: Why don't I do this. Let me do this. Let me - Ms. Murphy, would you put Mr. Litvak, the interpreter, and the corporate representative in a breakout room.

THE CLERK: Yes, Your Honor.

THE COURT: I just want to make sure we're not talking past each other.

(Discussion held off the record).

MR. LITVAK: Okay, Your Honor, I think we are back.

THE COURT: Okay.

MR. LITVAK: We are ready to proceed, Your Honor.

THE COURT: I've got to wait. Her picture is not back up. There it is. Okay.

So, again, is By Trade willing to give up its right to a trial?

THE INTERPRETER: Yes. So the defendant wanted the interpreter to repeat the interpretation of the question, and the interpreter will do that right now.

DEFENDANT REPRESENTATIVE: Yes.

THE COURT: Okay. Is the corporation also willing to give up the other rights that I discussed if it pleads guilty?

DEFENDANT REPRESENTATIVE: Yes.

THE COURT: The offense to which the corporation intends to plead guilty is a felony offense, and if the plea is accepted the corporation will be found guilty of this offense. It will be subject to sentencing as I will describe in detail in a few minutes, but there also will be other collateral consequences and demands, although some of it probably won't be relevant for the corporation. I mean, normally there would be a deprivation of civil rights, right to vote, public office, serve on a jury, right to possess a firearm, a DNA sample being collected, and possible immigration consequences.

I think the better -- what appears to be the most relevant collateral consequence is that the guilty plea could work to the corporation's disadvantage in the future if it is found guilty of another crime because there is a possibility it could receive a more severe penalty at that time as a result of this guilty plea and conviction.

Let me just actually check in with Mr. Kale and Mr. Litvak. I'm assuming that there is no consequence for the corporation as it would be for an ordinary individual with respect to right to vote, holding office, serving on a jury, and DNA sample. Is that the United States' understanding, Mr. Kale?

MR. KALE: That is correct, Your Honor. The biggest consequence is I think they would be disqualified, excluded from doing business with the Department of Commerce, Defense, and they could be placed on an OFAC, which is the Department of Treasury's Office of Foreign Asset Control list that could bar them from doing business with the United States.

THE COURT: But those are -- there are business-related consequences, but the ordinary individual consequences would not attach, correct?

MR. KALE: Correct, Your Honor.

THE COURT: And, Mr. Litvak, that's your view as well?

MR. LITVAK: That is correct, Your Honor.

THE COURT: All right. I just wanted to be clear about that.

All right. So I just want to make sure, corporate representative, that you understand the additional consequences of pleading guilty.

DEFENDANT REPRESENTATIVE: Yes, I do understand.

THE COURT: And are you willing to accept all of those consequences and still willing to give up your right to a trial and the other rights I have discussed?

DEFENDANT REPRESENTATIVE: Yes.

THE COURT: All right. And is anyone threatening the corporation or forcing the corporation to enter a plea of guilty today?

DEFENDANT REPRESENTATIVE: No.

THE COURT: All right. And on the corporation's behalf, do you need more time to talk to Mr. Litvak about giving up the right to a trial and pleading guilty?

DEFENDANT REPRESENTATIVE: No, I don't need that.

THE COURT: Mr. Litvak, are you sure that the corporation has had enough time and received enough information and guidance from you about the strength of the government's case and the strength of any defense case such that the

corporation is able to make a knowing, intelligent, and voluntary choice to plead guilty here today?

MR. LITVAK: Yes, I am. Yes.

THE COURT: And are you convinced that the corporation understands the rights it will be waiving by pleading guilty?

MR. LITVAK: Yes. Yes, Your Honor.

THE COURT: And are you further convinced that the corporation understands the minimum and maximum sentences and all of the consequences involved here?

MR. LITVAK: Yes, I am.

THE COURT: All right. Assistant U.S. Attorney Kale, I understand that there is a written plea agreement. Is that correct?

MR. KALE: Yes, Your Honor.

THE COURT: All right. And you have provided an opportunity for Mr. Litvak and the corporate representative and others in the corporation to review this plea agreement?

MR. KALE: Yes, Your Honor.

THE COURT: The corporate representative for By Trade, have you reviewed this plea agreement carefully?

DEFENDANT REPRESENTATIVE: Yes,

carefully.

THE COURT: And would you like a recess or more time to review the plea agreement or talk to Mr. Litvak about whether this is really an agreement the corporation wishes to enter into?

DEFENDANT REPRESENTATIVE: No, I don't need that.

THE COURT: All right. Assistant U.S. Attorney Kale, would you outline the terms of the plea agreement, please.

MR. KALE: Thank you, Your Honor. The plea agreement is a nine-page letter. And just for the record, it was actually dated November 29th. Because of the different locations of the parties, it was sent around and it was executed on November 29th and then sent to the Court.

The plea agreement begins with a description of the two offenses to which By Trade OU is pleading guilty, and then discusses the penalties I discussed earlier, including noting that By Trade OU agrees to forfeit approximately 312,192 Euros and $0.44 that are in an account frozen.

I do note that I understand from counsel that a motion may be forthcoming. Because By Trade's assets were frozen, there may be a motion to

both pay the special assessment of 800 from those funds when they are forfeited and for the fee, which is in the By Trade corporate resolution, from those funds. I just alert the Court to that.

The plea agreement goes on to discuss the sentencing guidelines and the applicability, as well as the stipulation that is the 10th and 11th pages of this plea agreement.

The parties agree that because the offense conduct to which the defendant is pleading guilty is covered in Section 2M, as in Mary, 5.1, that guideline is not listed in the fines section. So there's a joint fine agreement. The government and the defendant agree that no criminal fine is an appropriate sentence in this case pursuant to Title 18 U.S.C. Section 3553 and 3572. And in assessing the appropriate fine, the parties acknowledge the defendant and its agents have agreed to forfeit assets of approximately $300,000, which constitute all of the current assets of By Trade OU, and will not be able to pay a fine.

By Trade OU understands that Your Honor is not bound by this agreement on the recommended fine, and that By Trade cannot withdraw its guilty plea if Your Honor imposes the jointly recommended

-- something outside the jointly recommended fine.

The plea agreement goes on to discuss a waiver of trial rights that Your Honor has gone over, and also notes that By Trade OU is waiving the statute of limitations to the extent that the statute of limitations is tolled as of today should By Trade OU's guilty plea come back in the future.

By Trade OU is also waiving its right to challenge the conviction if for some reason -- if it later claims that there are nonjurisdictional defects or that the statutes to which By Trade is pleading guilty are unconstitutional or that By Trade's admitted conduct does not fall within the scope of the statute.

By Trade OU is also waiving its right to appeal or collaterally attack the sentence so long as the sentence does not exceed five years probation, an $800 special assessment, a fine of up to $1,838,184, and forfeiture approximately 300,000 US dollars, no matter how the Court reaches the sentence.

Additionally, the plea agreement discusses disqualifications and exclusions that I mentioned earlier, and also notes that By Trade OU by executing this agreement acknowledges that it is

entering into the agreement and is pleading guilty freely and voluntarily because it is guilty.

It also -- By Trade OU also acknowledges that this agreement is limited to the undersigned parties and can't bind any other federal, state, or local authority. It also -- the plea agreement also discusses briefly that there will be collateral consequences, including that the government reserves the right to notify any state or federal agency about this guilty plea.

And the plea agreement also notes if Your Honor accepts By Trade OU's guilty plea, this will satisfy that corporation's federal criminal liability in this district as a result of its participation in schemes to engage in fraud resulting in contracts in Connecticut and elsewhere. That's a mistake. There is a mistake here which I will correct, but if the guilty plea is accepted, it will cover everything in the indictment, Your Honor.

Finally, there are no other promises, agreements or conditions that have been entered into other than those set forth in the plea agreement, and none shall be, Your Honor.

THE COURT: Mr. Kale, where was the mistake again?

MR. KALE: In the satisfaction of criminal liability there is a carryover on the second -- the third sentence, which says "rig bids and engage in fraud." That should be "in terms of schemes to export controlled goods from the United States and from Connecticut."

THE COURT: Understood.

MR. KALE: That third line of the first paragraph of the -- alternatively, we can also write in it will satisfy criminal liability for the conduct in the superseding indictment. Either one. There is a mistake there.

THE COURT: Yeah. All right. I guess the question then becomes how do we -- just procedurally, how do we remedy that mistake in the plea agreement and still have the plea agreement accepted? It seems to me that what you want to do, Mr. Kale, is make corrections on whatever is the latest document, get that to Mr. Litvak -- well, actually, let me -- one way to go about it, and I do want to see what Mr. Litvak proposes, is obviously making corrections to the document. I can make sure and canvass the corporate representative whether she understands that. I can certainly put her also in a breakout room with Mr. Litvak to discuss what that

changed language is going to be. I could then accept the plea agreement as it is with the understanding that everyone knows what changes will be made, and then the corrected document will then be submitted at the appropriate time.

But let me hear from Mr. Litvak.

MR. LITVAK: Yes, Your Honor. We can do the breakout room with my client. I will explain to her. And I think that the last option you just mentioned, I think that will be the best option for us.

THE COURT: Okay. All right. So let's do this then.

Ms. Murphy -- I'm going to do this in two separate processes. Ms. Murphy, put Mr. Kale and Mr. Litvak in a breakout room first, because I want them to be -- to agree on what the language is so that Mr. Litvak can actually have -- can make whatever edits to the document and see the edits Mr. Kale is suggesting, and then when they come back, we'll then put Mr. Litvak, the interpreter, and the corporate representative in a breakout room so Mr. Litvak can explain what the changes are, and then bring them out and we can then discuss it.

THE CLERK: So I have two breakout rooms

set up. When I open up the rooms, Attorney Kale and Mr. Litvak are going to be in a separate room, the interpreter and the defendant are going to be in a separate room, and when Mr. Kale comes back, I can place Attorney Kale in the other breakout room.

THE COURT: No, Attorney Kale just needs to come back. It's Attorney Litvak who needs to go in the breakout room.

THE CLERK: Right, when they come back I can move him around.

THE COURT: Okay, it sounds fine.

THE CLERK: Thank you.

THE COURT: Great. All right.

(Discussion held off the record).

MR. LITVAK: Okay, Your Honor. I'm back and I'm ready to speak with my client.

THE CLERK: All right. Mr. Litvak has been moved to the other breakout room.

(Discussion held off the record.)

MR. KALE: My apologies, Your Honor. I read this ten times, seven other people have read this, and I really apologize.

THE COURT: It's fine. Better to catch it now.

MR. LITVAK: Okay, Your Honor. We're

ready to proceed.

THE COURT: All right. We're back on. Before we go too far, I just wanted to just sort of clarify. All right. We're now back on the record.

There was a modification made to the plea agreement, which I want to make sure the corporate representative understands the modification and is comfortable with it as well.

Has she had a chance to review the modification and is she comfortable with it?

MR. LITVAK: Yes, she has, Your Honor.

THE COURT: All right. I need to hear from her as well.

DEFENDANT REPRESENTATIVE: Yes. Yes, I understood everything.

THE COURT: What I want to do is explain a few things. Although sentencings -- I think as a corporation, I think some of the discussion regarding sentencing that I ordinarily would do is probably -- is really less relevant. So I do want to talk about what the possible sentence is.

Because it's a corporation, the possible sentence really does fall in the range of probation of one form or another. There may be also fines that could be associated with this. There could be

a fine of as much as $500,000 on Count One and as much as $500,000 on Count Four. There is also a mandatory special assessment on both counts of $400, which would total $800.

The issue about how the Court will consider the question about whether a fine should be imposed and the amount of the fine, as well as the term of any probation, will be consistent with how the Court would view anything, which is there will be some report that will be generated by the United States Probation Office, and that report will give us some information that will help the Court understand exactly what makes sense with respect to sentencing.

The Court is, in effect, bound to follow the principal federal sentencing statute, 18 U.S.C. Section 3553, which will provide a range of factors, some of which are less relevant in this context, but ultimately the Court will have to make some determination about how everything makes sense.

Mr. Kale and Mr. Litvak, is there anything I should be advising them with respect to sentencing given we're dealing with a corporation rather than an individual?

MR. KALE: I think nothing beyond what

Your Honor has already advised and we have gone over. Thank you, Your Honor.

THE COURT: Mr. Litvak?

MR. LITVAK: Yes, I agree with that, Your Honor.

THE COURT: Okay. All right. But I do want to make sure that the corporate representative understands that regardless of what the parties agree to regarding sentencing in their plea agreement, that the Court's not bound by that, and that ultimately you won't know the sentence that the corporation will receive until the day of sentencing. And so if I end up calculating the sentence differently from what the sentencing guidelines or the statute suggest or from what the government and the corporation have agreed to or from what the corporation hoped for, this will not allow the corporation to have the sentence cancelled, to withdraw its guilty plea and to have the case go to trial. On behalf of the corporation, do you understand that?

DEFENDANT REPRESENTATIVE: Yes, I understand that.

THE COURT: And do you understand that I could impose a sentence more severe than the

corporation might expect?

DEFENDANT REPRESENTATIVE: I understand that, yes.

THE COURT: Do you have any questions about the issue of sentencing and how sentencing will be determined?

DEFENDANT REPRESENTATIVE: No, I don't have any questions about that.

THE COURT: All right. Also in the plea agreement there is a section concerning waiver of appeal rights. Have the provisions concerning waiver of appeal rights been fully explained to you as the corporation's representative?

DEFENDANT REPRESENTATIVE: Yes.

THE COURT: So in the plea agreement the corporation voluntarily, knowingly, and intelligently waived its right to appeal or to attack the conviction or sentence collaterally if it does not exceed the following: A five-year term of probation, an $800 special assessment, a fine of up to $1,838,184, and a forfeiture of $300,000. And that's even if the Court imposes such a sentence based on an analysis different from --

THE CLERK: I'm sorry, I just need to interrupt. I just want to make sure that the

interpreter is on the Russian line. I thought he was interpreting in Russian instead of English.

THE INTERPRETER: I beg your pardon. Ms. Loktajeva just noted that she understood everything in English, but didn't hear the interpreter the last -- during the last section.

THE COURT: Okay. All right. So you understand that these waivers -- the corporate representative understands these waivers are generally enforceable?

DEFENDANT REPRESENTATIVE: Yes, I did understood that.

THE COURT: All right. And -- but despite this waiver, if the corporation was to appeal some waiver that is claimed to survive the waiver, the corporation must file a notice of appeal within 14 days of sentencing. Do you understand that deadline?

DEFENDANT REPRESENTATIVE: Yes, I do understand that.

THE COURT: And is the corporation willing to waive the appeal rights described in the plea agreement?

DEFENDANT REPRESENTATIVE: Yes.

THE COURT: All right. Thank you.

All right. Now turning to the elements of the offense. Again, there are two separate charges we're discussing here today: Count One of the indictment, a violation of 18 U.S.C. Section 371, conspiracy to violate the Export Control Reform Act, and Count Four, a violation of 18 U.S.C. Section 1956(h), international money laundering conspiracy.

I'm going to ask Assistant U.S. Attorney Kale to explain the elements of both of these offenses. By "elements" I mean those facts that the government would have to prove beyond a reasonable doubt before the corporation could be convicted if the corporation decided not to plead guilty and instead proceeded to trial. And I want the corporation to bear in mind that the government would have to prove each of those facts by persuading a jury of 12 persons that those facts were true beyond a reasonable doubt. Do you understand that?

DEFENDANT REPRESENTATIVE: Yes, I do understand that.

THE COURT: All right. Mr. Kale?

MR. KALE: To find By Trade OU guilty of conspiracy to violate the Export Control Reform Act,

the government would have to prove three elements: First, that two or more persons entered into an unlawful agreement to cause the export or re-export of an item on the Commerce Control List without first obtaining a license from the United States Department of Commerce;

Second, By Trade OU knowingly and willfully became a member of the conspiracy and did so with the intention of furthering an objective of the conspiracy;

Third, during the conspiracy By Trade OU or one of its co-conspirators knowingly engaged in at least one overt act with the purpose of carrying out or accomplishing some object of the conspiracy.

For an international money laundering conspiracy, the government has to prove two elements. First, that two or more persons entered into an unlawful agreement to transport, transmit, transfer, or attempt to do so, a monetary instrument or funds from a place in the United States to or through a place outside the United States which the defendant knew -- or vice-versa, actually, which the defendant knew represented the proceeds of some form of unlawful activity, with the intent to promote the unlawful activity or to conceal or disguise the

nature, location, source, ownership, or control of the proceeds of the specified unlawful activity.

And, second, By Trade OU knowingly and willfully became a member of the conspiracy and did so with the intention of furthering an objective of the conspiracy.

THE COURT: Thank you very much, Mr. Kale.

On behalf of the corporation, does the corporate representative have any question about the elements of these two offenses?

DEFENDANT REPRESENTATIVE: No, I don't have questions. It's all clear.

THE COURT: All right. Now, turning to the matter that brings us here today, I would ask the corporate representative to explain -- I think we've got that Russian line thing again.

Okay, I would ask the corporate representative to explain to me what they did -- what the corporation did that shows the corporation is, in fact, guilty of the two charges to which it's now offering to plead guilty.

MR. LITVAK: So, your Honor, just real quick, before she responds, in the plea agreement we have a stipulated --

THE COURT: Yes.

MR. LITVAK: On the last page, page 10 and page 11, there is a stipulation of the offense conduct and relevant conduct. It's quite extensive. So we have agreed with the government we would just basically consent to that stipulation.

THE COURT: Okay. All right. So just -- yeah, I'm fine. No, I see that. I read the stipulation of offense conduct. So I just want to be clear.

So the corporate representative, in terms of explaining what the corporation did, you are willing to stipulate to pages 10 and 11 -- at least on my version it's 10 and 11, regarding -- I'm sorry, let me start again.

Is the corporate representative willing to stipulate to all of the facts -- the nine facts that are laid out in the stipulation of offense conduct in the plea agreement?

DEFENDANT REPRESENTATIVE: Yes, I studied this list and I agree to this list.

THE COURT: All right. Great. Thank you very much.

Now what I'm going to do now is ask Mr. Kale to summarize what the corporation did that

makes them guilty of the charges to which they intend to plead and to summarize the government's evidence as to the charge against them.

Mr. Kale, if you also want to relate to the stipulation of offense conduct, that's fine as well, but anything you wish to add on the record, that's fine.

MR. KALE: Just the method we would prove it, Your Honor. If it had gone to trial we would prove it through the testimony of special agents of the Homeland Security Investigations, the Federal Bureau of Investigation, the Department of Commerce, as well as email search warrants, the testimony of witnesses who have spoken to officials in Estonia and Latvia pursuant to mutual lateral assistance treaty requests, as well as evidence garnered from Estonia pursuant to mutual lateral assistance requests, and wire transfer documents. We would be able to prove all of the nine items that are in the stipulation of offense conduct that are on pages 10 and 11 of the plea agreement, Your Honor.

THE COURT: Thank you very much, Mr. Kale.

And so just the corporate

representative, based on the nine items that you've already agreed to, do you agree with Mr. Kale's summary of what you did?

DEFENDANT REPRESENTATIVE: Yes, I do agree to that.

THE COURT: What I'm going to do now is, I want to turn back to the plea agreement itself. Does the -- corporate representative, does the written plea agreement, with the modification that was made here in court, and the other matters we have discussed today as outlined by Assistant U.S. Attorney Kale, fully and accurately reflect the understanding -- the understanding of the agreement that the corporation is entering into with the United States government?

DEFENDANT REPRESENTATIVE: Yes, absolutely.

THE COURT: And you are aware that your attorney, Mr. Litvak, and Assistant U.S. Attorney Kale have discussed the corporation's agreement to plead guilty? You are aware of that?

DEFENDANT REPRESENTATIVE: Yes.

THE COURT: And is the corporation's willingness to plead guilty today based on the prior discussions between Mr. Litvak and Assistant U.S.

Attorney Kale that have resulted in this plea agreement we have today?

DEFENDANT REPRESENTATIVE: Yes. Corporation By Trade pleads guilty.

THE COURT: All right. And other than the promises contained in the written plea agreement, has anyone made any promises that are causing this corporation to plead guilty?

DEFENDANT REPRESENTATIVE: No.

THE COURT: Has anyone made any threats against the corporation or is anyone in any way forcing the corporation to plead guilty or otherwise coercing the corporation to plead guilty?

DEFENDANT REPRESENTATIVE: No.

THE COURT: Is the corporation pleading guilty of its own free will and because the corporation is, in fact, guilty?

DEFENDANT REPRESENTATIVE: Yes, of its own free will.

THE COURT: All right. Mr. Kale and Mr. Litvak, what arrangements have you all made about having the final plea agreement signed along with the stipulation of offense conduct and returned to the court? What's the process?

MR. KALE: I have already sent the

corrected copy to Attorney Litvak. He will return it to me, and then I will file it. Should I file it on the docket or send it to Ms. Murphy? Either way.

THE COURT: Send to Ms. Murphy for filing on the docket consistent with what we normally do.

Is it going to be signed by the corporate representative or signed by Mr. Litvak on behalf of the corporation? Who is signing? Is the corporate representative signing the plea agreement and the stipulation of offense conduct?

MR. LITVAK: Yes, Your Honor. She will sign it and we'll get it back to Mr. Kale by tomorrow.

THE COURT: All right. That's fine.

All right. Now, at this point now I'm going to have the clerk of court turn to the actual plea. This will be the last opportunity to decide whether the corporation wishes to go through with it and enter a plea of guilty.

Is the corporation willing to enter a plea of guilty at this time -- or be put to a plea?

DEFENDANT REPRESENTATIVE: Yes, the corporation, By Trade, pleads guilty.

THE COURT: Okay. We have to read the

charge first. I'm going to have the charge - I'm going to have the clerk of court read the charge to you unless you a waive a reading of the charge. Do you waive a reading of the charge, which is basically just all of the language. You can consult with Mr. Litvak if you need to.

DEFENDANT REPRESENTATIVE: Yes, if we could consult with Mr. Litvak.

THE COURT: Fine.

Ms. Murphy, please put them in a breakout room.

(Discussion held off the record.)

MR. LITVAK: We are ready to proceed.

THE COURT: All right. Do you wish to waive a reading of the charge?

DEFENDANT REPRESENTATIVE: Yes, please. I would like to waive that.

THE COURT: All right. Ms. Murphy, would you put -- would you provide the plea.

THE CLERK: In the case of the United States of America v. By Trade OU, criminal number 3:22CR100, as to Count One of the superseding indictment, charging you with violation of Title 18, United States Code, Section 371, what is your plea?

DEFENDANT REPRESENTATIVE: Yes, the

corporation pleads guilty to this charge.

THE CLERK: And as to Count Four of the superseding indictment charging you with violation of Title 18, United States Code, Section 1956(h), what is your plea?

DEFENDANT REPRESENTATIVE: The corporation pleads guilty to that charge.

THE CLERK: Thank you. Your Honor, the defendant has pled guilty as to Counts One and Four of the superseding indictment.

THE COURT: Thank you, Ms. Murphy. On the basis of the plea agreement and the stipulation of offense conduct attached to it --

THE CLERK: You are freezing up, Judge.

THE COURT: I have not changed or done anything. Is it now working?

All right. On the basis of the plea agreement and the stipulation of offense conduct attached to the plea agreement and the matters discussed today, the answers given by the corporate representative on behalf of By Trade OU under oath, on the record and in the presence of counsel to the questions of the Court, the remarks of Mr. Litvak, it is the finding of the Court in the case United States v. By Trade OU, that the defendant is fully

competent and capable of entering an informed plea, that it is aware of the nature of the charge and the consequences of the plea, and the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense.

The Court finds that the defendant knows of the defendant's right to plead not guilty and trial and related rights, and that the corporation is giving up these rights by its plea of guilty; that it is aware of the maximum possible sentence and any minimum required sentence in terms of imprisonment, supervised release, fine, forfeiture, restitution, and payment of a special assessment; that it knows of the Court's obligation to consider the sentencing statute and the sentencing guidelines; and the defendant knows of and accepts the terms of any plea agreement provision waiving the defendant's right to appeal or to attack the sentence collaterally.

The plea to Count One and Four of the indictment, therefore, is accepted, and the corporation is now adjudged guilty of that offense.

Accordingly, a finding of guilty shall enter and the case is referred to the United States

Probation Office for a presentence investigation.

Again, the United States Probation Office will prepare a presentence report on the corporation. That will be submitted to the Court for determining the appropriate sentence in the case. The probation officers work for the court, not the United States Attorney's Office, so your cooperation with the United States probation officer generally will benefit you. It is very important for the corporation to discuss with its attorney what to say to the probation office because, again, the presentence report is very important in the process of determining the sentence under the sentencing guidelines. There is also the right to have -- the corporation's right to have the attorney present during any discussions with the probation office.

So please read and review the presentence report. At sentencing I will ask if the presentence report has been reviewed, understood, and any responses given to it to the probation office or to the attorney.

I guess it's not -- the issue about release pending sentencing is not applicable.

Under Local Rule 32(f), I will defer

entering a scheduling order. If the parties can meet, confer, submit a proposed scheduling order in consultation with probation by December 16th, that would be greatly appreciated.

Does that work for the United States, Mr. Kale?

MR. KALE: It does, Your Honor. As I noted earlier, we're going to be moving for forfeiture first. And then I believe Mr. Litvak may be moving for his fees from the forfeited amount. So we may have a delayed sentencing based on that. But other than that it works, Your Honor.

THE COURT: And, again, what I'm asking for is the schedule by December 16th. So if you all can figure out what you think the timing is by then, that's fine. If you need additional time to figure out timing, you can certainly request that because I certainly have no problems with that.

MR. KALE: Thank you, Your Honor.

THE COURT: All right. Anything further, Mr. Kale?

MR. KALE: Your Honor, because this plea is entered, and we've made extradition requests, I think when we made extradition requests the indictment went overseas and it went in full. So

I'm actually going to move to unseal the superseding indictment, if Your Honor will let me do so orally, because it's basically been revealed in Europe and elsewhere. It's only sealed on the docket here. So at this point, the typical reasons for sealing it, secrecy while pending arrest and other things, are sort of moot. So I would respectfully move to unseal the docket and the indictment in this case.

THE COURT: Mr. Litvak, any objection?

MR. LITVAK: No objections, Your Honor.

THE COURT: All right. The motion is granted.

All right. Anything further, Mr. Kale?

MR. KALE: No. Thank you, Your Honor.

THE COURT: All right. Mr. Litvak, are there any issue with that issue or any other issues for the Court to take up today?

MR. LITVAK: No issues.

THE COURT: All right. Thank you all very much. You all have a good day.

(Proceeding concluded 10:25 a.m.)

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

11/12/23

Date

/S/ Sharon Montini

Official Reporter